UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA PIERSON, *et al.*,<br><br>            Plaintiffs,<br><br>   v.<br><br>JANICE E. MARTINELLI,<br>Individually and as TRUSTEE OF THE<br>JANICE MARTINELLI TRUST DATED<br>JUNE 27, 2005, *et al.*,<br><br>            Defendants. | Case No. 19-cv-1755-BAS-KSC<br><br>**ORDER DENYING DEFENDANTS'**<br>**MOTION TO DISMISS (ECF No. 17)** |

Pending before the Court is Defendants' second motion to dismiss. (ECF No. 17.) Defendants move to dismiss Plaintiffs' First Amended Complaint under Rule 12(b)(1), alleging a lack of standing, and under Rule 12 (b)(6), alleging insufficient facts to support Plaintiffs' claims of discrimination based on sex or disability. Alternatively, Defendants move for a more definite statement under Rule 12(e). (ECF No. 17.) Plaintiffs filed an opposition to the motion (ECF No. 18), and Defendants filed a reply. (ECF No. 20.) The Court finds this motion suitable for determination on the papers and without oral argument. Civ. L. R. 7.1(d)(1).  For the reasons stated below, the Court **DENIES** Defendants' motion.

## I. BACKGROUND

Plaintiffs Christina Pierson and her boyfriend Brandon Bolic allege that Ms. Pierson's former landlord, Janice Martinelli violated the Fair Housing Act ("FHA"), California Fair Employment and Housing Act ("FEHA") and the Unruh Civil Rights Act ("Unruh Act") by banning Mr. Bolic from visiting Ms. Pierson at her apartment that she rented from Ms. Martinelli. Ms. Pierson also alleges that Ms. Martinelli discriminated against her based on her disability. The details of Plaintiffs' allegations are summarized in the Court's April 29, 2020 Order. (ECF No. 15.) In that Order, the Court granted in part and denied in part Ms. Martinelli's first motion to dismiss (ECF No. 11), holding that (1) the Complaint included enough facts to establish Ms. Pierson's standing but not Mr. Bolic's; (2) Ms. Pierson plausibly stated disability discrimination claims; and (3) Ms. Pierson did not plausibly state gender discrimination claims. (ECF No. 15.) The Court allowed Plaintiffs to amend the Complaint, which Plaintiffs have done.

According to Plaintiffs' First Amended Complaint ("FAC," ECF No. 16), Ms. Martinelli told Ms. Pierson on multiple occasions that men are not allowed to visit her apartment. Ms. Martinelli is quoted as stating

- "I told you I don't want men at my unit. I'm calling the police";
- "I don't like men";
- "I don't rent to men";
- "I don't want any men at my property"; and
- "I see [Mr. Bolic] is here again. I told you no visitors. No men. Your parents can visit you but not [Mr. Bolic] and not your son."

(FAC ¶¶ 15, 25.) The FAC states that Ms. Martinelli would call the police on Mr. Bolic, totaling more than fifty times between September 2016 and January 2018, when he visited Mr. Pierson's apartment. (*Id.* ¶ 18.) In December 2017, Ms. Martinelli went so far as to change the locks on Ms. Pierson's door. (*Id.* ¶ 27.) When the police questioned Ms. Martinelli about the incident, she told the police that she did not want Mr. Bolic at the apartment complex but did not explain whether Mr. Bolic had done anything wrong. (*Id.*)

The FAC raises new allegations about the injury Plaintiffs endured because of Ms. Martinelli's actions, which include loss of consortium and emotional distress. (FAC ¶¶ 18–19, 23, 25.) Plaintiffs allege that Ms. Martinelli's actions were especially damaging because Ms. Pierson could not leave her apartment between October 2017 and January 2018 due to the intensification of her Lupus disease, which made her apartment the only place where the couple could visit with each other. (*Id.* ¶ 19.)

## II. ANALYSIS

### A. Rule 12(b)(1)

#### 1. Legal Standards

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a federal court's subject matter jurisdiction. "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "They possess only that power authorized by Constitution and statute." *Id.* "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (citations omitted).

When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, courts should consider the jurisdictional issue first, which "does not require" analysis of the merits. *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011). "For purposes of ruling on a motion to dismiss for want of standing, [the court] must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975). "This is not to say that Plaintiff may rely on a bare legal conclusion to assert injury-in-fact, or engage in an 'ingenious academic exercise in the conceivable' to explain how Defendants' actions caused his injury." *Maya*, 658 F.3d at 1068.

Standing is an essential element for determining a right to bring a claim in federal court. *City of South Lake Tahoe v. California Tahoe Reg'l Plan. Agency,* 625 F.2d 231, 233 (9th Cir. 1980). To satisfy the standing requirement, a party generally needs to demonstrate "'a personal stake in the outcome' in order to 'assure that concrete adverseness

which sharpens the presentation of issues' necessary for the proper resolution of constitutional issues." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).

For each claim, Plaintiffs must demonstrate that they satisfy the three constitutional requirements of standing: (1) injury in fact; (2) causation; and (3) redressability. *Bennett v. Spear*, 520 U.S. 154, 167 (1997); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The injury-in-fact requirement must implicate "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560.

### 2. Application

Ms. Martinelli argues that Plaintiffs did not establish an injury in fact and thus their claims should be dismissed under Rule 12(b)(1) for lack of standing. As an initial matter, this Court has already held that Ms. Pierson has standing (ECF No. 15 at 5:24–28), and Defendants may not re-raise the issue. *See Beauchamp v. Anaheim Union High Sch. Dist.*, 816 F.3d 1216, 1225 (9th Cir. 2016) (holding that collateral estoppel barred the court from relitigating an issue that the court previously resolved in the same action).

As to Mr. Bolic's standing, Plaintiffs' amendment of the complaint have cured the prior deficiency the Court noted in the April 29, 2020 Order—that the original Complaint did not state whether Mr. Bolic suffered any palpable, distinct injury. The FAC states that Mr. Bolic suffered severe distress due to Ms. Martinelli's calls to the police. He could not visit Ms. Pierson without having to worry about being subjected to extensive questioning by the police. (FAC ¶ 18.) The FAC states that whenever Ms. Martinelli called the police or otherwise interfered with the couple's visits, Mr. Bolic felt pressured and left the property. (*Id.* ¶ 25.) The couple would fight, become upset, and lose consortium with each other. (*Id.* ¶¶ 18–19, 25.) According to the FAC, the resultant toll on the couple's relationship was amplified by the fact that Ms. Pierson's apartment was the only place where the couple could visit with each other between October 2017 and January 2018, when Ms. Pierson's health deteriorated and prevented her from leaving her apartment. (*Id.*

¶ 19.)

These facts make it plausible that Ms. Martinelli's actions materially deterred Mr. Bolic from visiting Ms. Pierson in her apartment, which constitutes an injury-in-fact. *See Moua v. City of Chico*, 324 F. Supp. 2d 1132, 1142 (E.D. Cal. 2004) (finding that the plaintiffs have stated an injury-in-fact by alleging that they were deterred from visiting a friend's residence because of the landlord's discriminatory actions). The FAC contains allegations that support the existence of a causal connection between Mr. Bolic's injury and Ms. Martinelli's actions, and the injury will be redressed by a favorable decision.

Because the facts alleged in the FAC satisfy all elements of Article III standing as to both Plaintiffs, the Court denies Ms. Martinelli's Rule 12(b)(1) motion to dismiss for lack of standing.

**B.   Rule 12(b)(6)**

**1.   Legal Standards**

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court must accept all factual allegations pleaded in the complaint as true and draw all reasonable inferences from them in favor of the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court need not accept "legal conclusions" as true. *Iqbal*, 556 U.S. at 678. Although the court accepts plaintiff's allegations as true, it is not proper for the court to assume that "the [plaintiff] can prove facts that it has not alleged or that the defendants have violated the . . . law[] in ways that have not been alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983)

### 2. Application

Ms. Martinelli moves to dismiss Plaintiffs' disability and gender discrimination claims for failure to state a claim under Rule 12(b)(6). The Court has already denied Defendants' Rule 12(b)(6) motion as to Ms. Pierson's disability discrimination claims (ECF No. 15 at 8) and finds no reason to revisit the issue.

As to Plaintiffs' gender discrimination claims, Plaintiffs raised new allegations in the FAC, after the Court found that Ms. Pierson did not state a plausible claim of gender discrimination. The Court's April 29, 2020 Order did not rule on Mr. Bolic's gender discrimination claims. The Court thus turns to resolve whether Plaintiffs' gender discrimination claims survive Defendants' Rule 12(b)(6) motion to dismiss.

FHA protects against discrimination "in the terms, conditions, or privileges of sale or rental of a dwelling . . . because of . . . sex." 42 U.S.C. § 3604(b). The same analysis that applies to Plaintiffs' FHA antidiscrimination claims applies to the claims brought under FEHA and Unruh Act. *Pac. Shores Props., LLC v. City of Newport Beach*, 730 F.3d 1142, 1156 (9th Cir. 2013).

Where the allegation is that the violative policy "on its face applies less favorably to a protected group," the policy is considered "facially discriminatory," and the question is not whether the defendant treats people differently based on protected class, or the defendant has a discriminatory motive, but whether the defendant can offer a legally

- 6 -

19cv1755

sufficient reason for the discrimination. *See Int'l Union, United Auto., Aerospace & Agr. Implement Workers of Am., UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 200 (1991) (finding that the employer's policy was facially discriminatory against female employees and thus the appropriate test to determine the lawfulness of the the facially discriminatory policy was whether an employee's sex was a bona fide qualification); *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1048–49 (9th Cir. 2007) (applying *Johnson Controls* to a fair housing claim).

In the fair housing context, "'a plaintiff makes out a *prima facie* case of intentional discrimination under the [Fair Housing Act] merely by showing that a protected group has been subjected to explicitly differential—i.e. discriminatory—treatment.'" *Cmty. House*, 490 F.3d at 1050 (quoting *Bangerter v. Orem City Corp.*, 46 F.3d 1491, 1501 (10th Cir. 1995)); *e.g.*, *Blackington v. Quiogue Family Tr.*, No. 11-CV-1670 W WVG, 2013 WL 1701883, at *4–5 (S.D. Cal. Apr. 18, 2013) (finding that an apartment policy that limits when children may use the facilities is facially discriminatory because it applies only to families with children). "[T]he bar for establishing that a rule is 'facially discriminatory' is extremely low." *Blackington*, 2013 WL 1701883, at *4. A defendant may defend its facially discriminatory policy by showing "either: (1) that the restriction benefits the protected class or (2) that it responds to legitimate safety concerns raised by the individuals affected, rather than being based on stereotypes." *Id.*

Here, Plaintiffs have alleged that Ms. Martinelli repeatedly informed Ms. Pierson that males may not be present in the apartment complex. (FAC ¶¶ 15–16, 18, 25.) Specifically, Plaintiffs have quoted Ms. Martinelli as stating

- "I told you I don't want men at my unit. I'm calling the police";
- "I don't like men";
- "I don't rent to men";
- "I don't want any men at my property"; and
- "I told you no visitors. No men. Your parents can visit you but not Brandon and not your son."

(FAC ¶¶ 15, 25.)  Reading the allegations in the light most favorable to Plaintiffs, these facts plausibly state that Ms. Martinelli instituted a facially discriminatory policy against males at the apartment complex.

Although Ms. Martinelli argues that Plaintiffs have not shown that she engaged in a pattern of discrimination or that her actions were motivated by discriminatory intent, neither factor is relevant to the present analysis, which involves a facially discriminatory policy. *Johnson Controls*, 499 U.S. at 199 ("[T]he absence of a malevolent motive does not convert a facially discriminatory policy into a neutral policy with a discriminatory effect.")  All that Plaintiffs needed allege were facts that allow a plausible inference that Defendants subjected males to explicitly differential treatment at Defendants' property. *Cmty. House*, 490 F.3d at 1050.  Plaintiffs have met that burden.

The facts raised in the FAC give rise to a plausible inference that Ms. Martinelli enforced a facially discriminatory policy against males at the subject apartment complex. Therefore, the Court denies Defendants' Rule 12(b)(6) motion.

### C. Rule 12(e)

A motion for a more definite statement filed under Rule 12(e) is reserved only for pleadings that are "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." *CMAX, Inc. v. Hall*, 290 F.2d 736, 738 (9th Cir. 1961). Here, Plaintiffs have alleged enough facts that enable Defendants to frame a responsive pleading.  Therefore, Defendants' motion for a more definite statement is **DENIED**.

### III. CONCLUSION

The Court **DENIES** with prejudice Defendants' Rule 12(b)(1) motion to dismiss for lack of standing.  The Court **DENIES** with prejudice Defendants' Rule 12(b)(6) motion to dismiss Plaintiffs' claims for failure to state a cause of action.  Defendants' Rule 12(e) motion for a more definite statement is **DENIED**.

**IT IS SO ORDERED.**

**DATED: September 15, 2020**

Hon. Cynthia Bashant
United States District Judge

- 8 -

19cv1755